[No. F060662. Fifth Dist. Oct. 18, 2011.]

In re L.K., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
L.K., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

COUNSEL

Hassan Gorguinpour, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne LeMon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, J.**—Appellant L.K., 15 years old at the time of the offenses, appeals from the juvenile court's true finding that she committed a violation of Penal Code[1] section 273a, subdivision (a), as alleged in count 1 (child abuse likely to produce great bodily harm), when she drove her mother's truck over 17-month-old M.S., severely injuring him.[2] She also raises two procedural issues with the juvenile court's disposition imposing a maximum term of confinement of consecutive six- and one-year terms for the two counts the juvenile court found true.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### 1. *Jurisdictional Hearing*

Appellant and her mother, Latasha,[4] among others, went to the S. residence the day after Easter. At some point, appellant was outside with three other children, including M.S. Other family members and acquaintances were inside the house.

Ten-year-old Robert L. testified he was walking to his home that day. He resided on the same block as the S. residence, and had a direct, unobstructed view of the S. residence. He had known appellant for approximately two

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

[2] The court also found the allegations of count 2, Vehicle Code section 20001, subdivision (b)(2), true, but appellant does not appeal from that finding.

[3] Facts have been gleaned from the reporter's transcript of the jurisdictional and dispositional hearings, as well as the probation report.

[4] A number of people involved in this matter are related to each other. We use first names as a means of more easily distinguishing the various people involved, as well as protecting the privacy of the minors involved, and mean no disrespect.

weeks, having seen her several times over that period. He also was familiar with Latasha's white Chevrolet truck. He testified he saw appellant in the white truck, alone in the driver's seat. He saw M.S. in front of the truck. He then saw the truck back up, then move forward and the driver's side wheel hit M.S. He testified, "[t]he baby went in the wheel and went around it." Scared at what he had just witnessed, he ran home. Two days later, he talked to a police officer and provided the same description of events. Several days later, he spoke with a social worker and, although nervous, provided the same essential facts.

No one else witnessed M.S. being actually injured. Defense witnesses suggested M.S.'s mother, Ebony, was the one who had hit M.S., not appellant.

Family members in the house were alerted that M.S. was hurt at approximately 10:00 a.m. When he was brought into the house crying, by his nine-year-old aunt, Gracey, he appeared to have a burn mark on his arm. Latasha testified she saw no other injuries and treated M.S. for the burn, but that "[n]o one called the paramedics or anything, because nobody thought it was serious." Latasha also testified that she was told by Gracey and eight-year-old Jonathan that "[they] heard a monster noise and then when [they] turned around, the baby was at the edge of the driveway." Appellant was present in the house, yet remained silent as family members treated M.S.

Ebony returned from running an errand and was alerted that M.S. was hurt, but did not know the extent of his injuries. M.S.'s grandmother, Diana, suggested they take M.S. to the hospital, but Ebony hesitated due to a pending child protective services (CPS) action involving her. About 12:00 noon, approximately two hours after M.S. was injured, appellant and Latasha left the S. residence. M.S. had yet to receive medical attention at that time.

Eventually, M.S. was taken to a medical clinic. At approximately 4:00 p.m. a police officer, who was also an experienced paramedic, observed at the clinic that M.S. showed signs of shock and his condition was consistent with being run over by a vehicle. M.S. was then transferred to a hospital. The parties stipulated that M:S. suffered great bodily harm, including "a broken rib, abrasions, lacerations to his arm, injuries to his liver and kidneys which subsequently required the removal of one of his kidneys surgically."

After the People had presented their case, appellant's counsel essentially made a motion to dismiss the allegations based on insufficient evidence. As to

the section 273a, subdivision (a) allegation (count 1), counsel argued no evidence indicated appellant willingly ran over the baby. The court denied the motion and specifically stated it understood the motions with regard to count 1, and commented it had spent some time looking at the jury instructions for the offense. The court noted the willfulness requirement, and further noted that "the act in question can qualify based on the criminal negligence conduct which is criminally negligent and a violation of a code driving a vehicle without a license, and then causing injury would be criminal negligence." While clarifying that the court was not deciding whether or not there was criminal negligence along those lines, the court did explain it would be a basis for denying the motion.

After the defense presented its case, defense counsel argued in closing that there was insufficient evidence to find that appellant was driving the truck. The juvenile court then found count 1 and count 2 (Veh. Code, § 20001 [leaving the scene of an accident and failure to render assistance to an injured person]) to be true. The court focused on two main evidentiary points: (1) testimony and photographs indicating where M.S. was found after he was injured, and where vehicles were parked on or near the driveway, were consistent only with the version of events, related by Robert L., where Latasha's truck hit M.S. and (2) Robert L.'s testimony, as the only eyewitness, was credible and consistent. From those evidentiary conclusions, the juvenile court found that "this minor was driving the vehicle," and "absolutely—accidentally, I think she ran over this little boy [while] concentrating on other things. It's not an intentional act, but it certainly is a criminally negligent act that she was operating a motor vehicle without a license in a way that is criminally negligent."

The juvenile court continued, "[a]nd once the incident occurred and she realized what she had done, she did not take appropriate steps to try to help that little boy. And that's Count II . . . she didn't tell anybody, she didn't get him medical care. She knew he was injured. She knew he was crying. That's pretty cold."

## 2. *Dispositional Hearing*

At the dispositional hearing a few weeks later, defense counsel once again argued no evidence was introduced to indicate appellant acted willfully in driving over M.S. for purposes of section 273a, subdivision (a), that "this was an accident," and requested the juvenile court dismiss the charge. The court declined to do so.

The court accepted the probation report's recommendation that appellant be committed to the Pathways Academy and incur a maximum term of confinement of seven years (six years for count 1; one year for count 2), granted appellant probation, and ordered appellant returned to Latasha's custody upon completion of the Pathways Academy program. The court clarified that its decision to follow the probation report recommendation on the penalty imposed was because appellant failed to speak up immediately after M.S. was injured.[5]

## DISCUSSION

### I. *The Section 273a, Subdivision (a) Allegations and Findings*

█ Appellant contends this court should reverse the juvenile court's true finding of the section 273a, subdivision (a) allegation because the court imposed the wrong legal standard—negligence per se rather than criminal negligence—and that under the proper legal standard, insufficient evidence supports the juvenile court's true finding. Based on the trial court's statements and findings, and Supreme Court precedent, we conclude it found L.K. directly inflicted harm on M.S. and then applied the wrong legal standard of criminal negligence to the corresponding direct infliction provision of section 273a, subdivision (a) in rendering its specific finding as to count 1. When applying the proper legal standard of intentional and willful infliction to the evidentiary record before us, we conclude that insufficient evidence supports the juvenile court's conclusion that appellant's actions in running over M.S. with the truck tire violated the direct infliction provision of section 273a, subdivision (a). But as explained below, we also conclude that she violated another provision of section 273a, subdivision (a) when she willfully permitted M.S. to suffer from injuries resulting from the accident.

### A. *The Juvenile Court Imposed the Incorrect Legal Standard*

█ Section 273a, subdivision (a)[6] "is an omnibus statute that proscribes essentially four branches of conduct." (*Sargent, supra*, 19 Cal.4th at p. 1215.)

---

[5] The juvenile court commented, "I'm going to accept the [probation] recommendation. It's not with great pleasure that I do it, because, frankly, if [appellant] had stepped up immediately after the child was injured and fessed up to what was—what had happened and the like, I probably wouldn't be doing this." The court continued, "[m]y real concern, though, was that a couple—at least a couple of hours passed while the child was suffering having been severely injured and she.didn't say a word. . . . We're all very fortunate that the child was not killed. Suffered serious injuries, but at least he was able to recover. So I think it's appropriate."

[6] The current section 273a, subdivision (a), is substantively identical to former section 273a, subdivision (1). (*People v. Sargent* (1999) 19 Cal.4th 1206, 1209, fn. 2 [81 Cal.Rptr.2d 835, 970 P.2d 409] (*Sargent*); see Stats. 1994, ch. 1263, § 3, p. 7936.)

These four branches or prongs are: " 'Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered . . . .' " (*People v. Valdez* (2002) 27 Cal.4th 778, 783 [118 Cal.Rptr.2d 3, 42 P.3d 511] (*Valdez*).)

■ In addressing these four separate types of conduct, our Supreme Court describes the second category as "direct infliction" and the first, third and fourth categories as "indirect infliction." (*Valdez, supra*, 27 Cal.4th at p. 786, italics omitted.) Under *Sargent*, the appropriate mens rea for the second category of direct infliction is general criminal intent, similar to battery or assault with a deadly weapon. (*Sargent, supra*, 19 Cal.4th at p. 1220.) Under *Valdez*, the necessary mens rea for the other three categories of indirect infliction is criminal negligence. (*Valdez, supra*, at p. 789.) In addressing indirect infliction, the *Valdez* court concluded, "criminal negligence is the appropriate standard when the act is intrinsically lawful . . . but warrants criminal liability because the surrounding circumstances present a high risk of serious injury. Criminal negligence is not a 'lesser state of mind'; it is a standard for determining when an act . . . is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances." (*Id.* at pp. 789–790.) Thus, this standard applies to the first, third and fourth prongs of section 273a, subdivision (a), where indirect infliction of harm on a child has occurred, such as failing to seek medical treatment, child endangerment, or willfully permitting situations that imperil children. (*Sargent, supra*, at p. 1218.)

The juvenile court's comments at both the jurisdictional and dispositional hearings focused on two events that occurred: those surrounding *when* M.S. was run over (a second-prong direct infliction) and those occurring *after* M.S. was actually injured (a first-prong indirect infliction of harm by willfully permitting suffering). In rendering its jurisdictional finding, however, the court focused on appellant's conduct of running over M.S., which is a second-prong direct infliction of unjustifiable physical pain, and mistakenly applied the wrong standard of criminal negligence. As outlined above, the proper burden of proof for a direct infliction situation is a general intent to willfully inflict unjustifiable physical pain; "willfully" is defined as when someone does an act willingly or on purpose. (CALCRIM No. 823; *Sargent, supra*, 19 Cal.4th at p. 1215 ["General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law."].) There is no evidence in the record that appellant could see or saw M.S. near

the truck, or otherwise knew his location, when it was moved to conclude she intentionally or willfully ran over M.S.

B. *Substantial Evidence Supports the Section 273a, Subdivision (a) True Finding*

Based on the factual record, however, there is substantial evidence that appellant violated the first prong of section 273a, subdivision (a) by willfully permitting M.S. to suffer unjustifiable physical pain and mental suffering when she failed to alert others at the house of the potential seriousness of M.S.'s injuries.

In determining the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment for substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that any rational trier of fact could find the allegation true beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "[We] presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) If the circumstances reasonably justify the fact finder's findings, a contrary finding reasonably reconciled with the circumstances does not warrant reversal of the judgment. (See *People v. Bean* (1988) 46 Cal.3d 919, 933 [251 Cal.Rptr. 467, 760 P.2d 996]; *In re George T.* (2004) 33 Cal.4th 620, 631 [16 Cal.Rptr.3d 61, 93 P.3d 1007].)

■ Moreover, "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403 [133 Cal.Rptr.2d 561, 68 P.3d 1].) The juvenile court here made a credibility determination in favor of Robert L.'s testimony that L.K. ran over M.S. in the truck. Latasha also testified that Gracey and Jonathan told her they heard a loud "monster" noise while they were playing outside and turned around and saw M.S. at the edge of the driveway. The truck was parked parallel in the dirt in front of the house, facing perpendicular to the driveway. No one testified and no evidence presented indicated there were large objects or other obstructions the truck could have rolled over or hit. M.S. was 17 months old at the time of the incident and big enough to jar the truck if it ran over him. He suffered severe injuries, including a broken rib, liver, and kidney injuries. Presuming Robert L.'s testimony to be true, a strong inference can be drawn that L.K. knew she had struck and rolled over some object on the driver's side.

When Gracey brought M.S. into the house crying and told the family—including L.K.—where she had found M.S., and family members discovered the burn mark on M.S.'s arm, L.K. made no mention to anyone of the possibility that M.S. was suffering much more serious injuries from having been run over. Instead, she remained quiet for at least two hours after M.S. was brought into the house. Contrary to appellant's assertion, the facts strongly support an inference that had L.K. spoken up and told the adults that M.S. had been struck by the truck tire, they would have sought medical care much more promptly. Latasha testified that "[n]o one called the paramedics or anything, *because nobody thought it was serious.*" (Italics added.) Diana had suggested to Ebony they take M.S. to the hospital, but Ebony had declined to do so. It is reasonable to infer a mother who knew that her child had been run over by a truck would much more readily agree to go to the hospital, even with a pending CPS action, than a mother who believed her child had only a superficial burn on his arm. Also contrary to appellant's assertion, it is reasonable to presume prompt medical care would have reduced the amount of time M.S. suffered from his injuries by at least two hours, if not more.[7]

Appellant's inaction falls squarely under the first prong of section 273a, subdivision (a), as an indirect infliction of abuse, which is judged by the criminal negligence standard, as discussed above. Thus, we determine here whether appellant's conduct was "such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life." (*Valdez, supra*, 27 Cal.4th at p. 791.)

Even assuming L.K. did not see M.S. after she had struck him, an ordinarily prudent or careful person who had felt the truck they were driving accidentally hit and roll over an object would have raised the possibility that M.S. had been that object, especially given that M.S.'s injured condition continued in such a way—and for at least the two hours L.K. remained silent at the house—that the family finally decided to take him to a health clinic, where it was discovered he had suffered severe injuries.

■ Moreover, appellant's failure to contest the juvenile court's true finding of the Vehicle Code section 20001 allegation supports the juvenile court's inference that appellant knew she had injured M.S. but failed to give appropriate aid. "[Vehicle Code] [s]ection 20001, subdivision (a) requires the driver of any vehicle involved in an accident resulting in the injury

---

[7] As noted above, Latasha testified she and appellant left approximately two hours after the incident, around noon or 1:00 p.m., and M.S. had yet to be taken to seek medical care. A police officer testified he observed M.S. at the clinic around 4:00 p.m., suffering from shock and injuries consistent with being run over.

or death of another to 'immediately stop the vehicle at the scene of the accident and . . . fulfill the requirements of [Vehicle Code] [s]ections 20003 [fn. omitted] and 20004. [Fn. omitted.]' . . . 'Although a violation of [Vehicle Code] section 20001 is popularly denominated "hit-and-run," the act made criminal thereunder is not the "hitting" but the "running." The legislative purpose of [Vehicle Code] sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself. . . .' [Citations.]" (*People v. Valdez* (2010) 189 Cal.App.4th 82, 86–87 [116 Cal.Rptr.3d 670].)

"[Vehicle Code] [s]ection 20001 has long been deemed to impose a knowledge requirement which requires proof the accused knew or was aware that (1) he or she was involved in an accident and (2) the accident resulted in injury to another. As to the latter, our Supreme Court has construed [Vehicle Code] section 20001 to require proof that the defendant '[knew] that the accident resulted in injury to a person or [knew] that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.' (*People v. Holford* (1965) 63 Cal.2d 74, 83 [45 Cal.Rptr. 167, 403 P.2d 423] . . . .)" (*People v. Harbert* (2009) 170 Cal.App.4th 42, 45 [87 Cal.Rptr.3d 751].) Thus, appellant implicitly acknowledges she knew M.S. was injured, and failed to render assistance, which is clearly a departure from what the conduct of an ordinarily prudent or careful person would be under the same circumstances, in violation of the first prong of section 273a, subdivision (a).

 Even though the juvenile court erred in its reasoning, " ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].) Substantial evidence supports the section 273a, subdivision (a) finding.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.

---

*See footnote, *ante*, page 1438.

## DISPOSITION

The matter is remanded to the juvenile court to exercise its discretion to determine whether the offenses were misdemeanors or felonies, and to make the express declaration required by Welfare and Institutions Code section 702. The juvenile court is further directed to recalculate the maximum term of confinement in accordance with this opinion. In all other respects, the judgment is affirmed.

Gomes, Acting P. J., and Kane, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 25, 2012, S198312.