Filed 4/26/13  P. v. Colver CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>GREGORY D. COLVER, JR.,<br><br>　　　Defendant and Appellant. | A133855<br><br>(San Mateo County<br>Super. Ct. No. SC073442A) |

## I. INTRODUCTION

After a jury trial, appellant was convicted of violations of both Penal Code sections 273a, subdivision (a) and 273d[1] in connection with burns incurred by his then 17-month-old son.  He appeals, claiming that the two crimes of which he was convicted were "mutually exclusive" and that, therefore, one of those convictions should be set aside.  He also claims that the probation revocation fee imposed on him should be set aside because the trial court did not properly assess his ability to pay the same.  We reject both arguments and affirm both the conviction and the sentence, including the probation fee imposed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his girlfriend, Elina Jimenez, are the parents of the victim in this case, then 17-month-old John Doe.  The three of them lived together in an apartment in

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

1

Daly City.  They also shared a car and a very similar job: Jimenez worked the day shift at two Shell gasoline stations in Daly City and appellant the graveyard shift.

During the afternoon of December 28, 2010, when Jimenez was working at one of those stations, appellant was at their apartment with their son.  There was a blackout at one of the Shell stations and, as a result, Jimenez had to work later than usual, i.e., until about 8:30 or 8:45 p.m.  During this period, appellant tried to call Jimenez several times, but she could not or did not answer those calls.  Appellant thus left voicemails for her, advising her that "our son had burned himself and that I needed to come home."

When Jimenez got to their apartment, she immediately saw that Doe had "burns on his legs on both sides."  According to Jimenez, appellant told her that when "he was asleep . . . the baby burned himself, somehow."  Appellant elaborated on this a bit, by stating to her that, when he was asleep he "woke up to our son whining next to him, so he, thinking he just wants a bottle, got him up, put him in the crib, went to go into the kitchen to make him a bottle, noticed the oven was on and open, ran back to him, and seeing that his legs were burned and called me."  Jimenez conceded in her direct testimony that such was the "version of events [appellant] told [her]" when she came home.

Jimenez, however, testified that she concluded that a different "version" of events was necessary "so this [the charges against appellant] wouldn't wind up happening."  The version of events devised by Jimenez was that appellant was "preheating the oven" to cook a pizza, then "went to the bathroom, and the baby touched the oven."

Jimenez took Doe to the Seton Medical Center, where Dr. Marc Levsky examined him and treated his burns.  She related to him her "version" of the events that led to Doe's burns.

Dr. Levsky, however, noted that the burn marks on Doe were "not oriented in any specific pattern."  More specifically, only the back of Doe's left leg, the front of his right leg, and one heel were burned, and the burn lines "don't follow any specific pattern that I can recognize."  Levsky then thought this might well be a "non-accidental trauma", and arranged to get Doe transferred to Saint Francis Hospital's burn center for further

2

evaluation; he also arranged for contacts to be made with both Child Protective Services and the Daly City Police Department.

Michelle LeVynh, a CPS worker, came to the Seton Hospital's emergency room and took pictures of Doe's injuries; later the same evening, she visited appellant's home with both Jimenez and Daly City Police Officer Andre Bray.

While there, they observed the kitchen area and noted that there was a "baby gate barricade" separating "the kitchen from the hallway," and also a toy box next to the oven door. A baking sheet was on the lowest rack inside the oven, and a plate of cold, "half eaten pizza on the counter" in the kitchen.

The oven was off and cold to the touch, but when LeVynh turned it on to 450 degrees (the temperature specified on the frozen pizza boxes in the refrigerator), it heated up quickly. The oven rose about three to three and a half feet above the kitchen floor. In that connection, while LeVynh and Officer Bray were at the apartment, Jimenez repeated to them "the same version of events" surrounding her son's burning, and specifically noted that her son "was a good climber."

Later that same evening, appellant arrived at Seton Hospital, and voluntarily accompanied LeVynh and Officer Bray to the Daly City Police Department for an interview. He claimed, in that interview, that somehow his son had climbed over the baby gate barricade and gotten onto the top of the stove, manipulated the knobs on the oven thus turning it on, stepped down onto the open oven door, and fell "backwards into the oven and burn[ed] himself." Appellant told Officer Bray and LeVynh that he was asleep at the time and awoke up to find his son "whimpering beside him and he noticed the . . . door to the oven was down." Appellant admitted he did not see the event, but told Bray and LeVynh his "surmising" as to how the accident happened.

After that interview, Officer Bray and his superior determined that there was probable cause to arrest appellant for child abuse.

As noted above, Doe had already been transferred to Saint Francis Hospital where he was examined and treated by Dr. Jeffrey DeWeese. The doctor noted that Doe had no burns on his face or upper extremities, unlike other children who had somehow gotten

3

into an oven. He thus concluded that Doe's "injuries were suspicious for nonaccidental trauma."

After this examination, and as a result of Dr. DeWeese's conclusions, Doe was placed in protective custody and released to CPS, which permitted him to stay at home, but only with Jimenez.

Two days later, i.e., on December 30, 2010, Daly City Police Detective Ron Harrison was assigned to investigate the matter. He interviewed appellant later the same day and, in the course of that interview, suggested that perhaps appellant had been trying to discipline Doe regarding the danger of hot ovens, and that "he made a mistake" in the course of so doing. Appellant then changed his version of the events of two days earlier. He stated to Detective Harrison that he had preheated the oven, then left the kitchen to use the bathroom, and returned to the kitchen to observe his son "smacking on the oven door." Per appellant's statements to Harrison, he asked Doe if "you want to feel that shit" and "[y]ou want to see what it feels like." He then put his son by the oven but, when the latter tried to get away from his father's grasp, appellant lost his grip, and Doe fell and his legs were then burned by the hot coils in the oven. Appellant even demonstrated "with his hands how he put his child in the oven."

Notwithstanding these admissions by appellant, some days later Jimenez tried to establish that Doe could have entered a heated oven on his own; she did so by videotaping him as she tried to coax him to enter an open but unheated oven. After about eight minutes of standing on the same oven door, Doe entered the oven, but then started crying when his mother, Jimenez, tried to get him to insert "his legs . . . into that oven."

On May 11, 2011, appellant was charged by an information with two counts, child abuse in violation of section 273a, subdivision (a), and cruel or inhuman corporal punishment in violation of section 273d. Both counts contained a special allegation that appellant had personally inflicted great bodily injury on a child under the age of five within the meaning of Penal Code section 12022.7, subdivision (d).

An expert witness for the prosecution, Dr. John Sterling, the Director of the Center for Child Protection at the Santa Clara Valley Medical Center County Hospital, opined

4

that the best explanation for the burns suffered by Doe was that he had been "suspended," then inserted part way into a hot oven, and then kicked his legs so that they hit the oven's racks and were thus burned. When recalled to the witness stand later, Dr. Sterling opined that it would be "very unreasonable" to infer that Doe would have or could have opened the oven, climbed on top of it by himself, waited for the oven to heat up, and then burned the outside of one leg and the back of another.

Defense experts Dr. Laura Liptai and Dr. Terri Haddix testified that the injuries suffered by Doe were such that there was a reasonable possibility they were caused by an accident.

On July 18, 2011, the jury convicted appellant on both counts and found the special allegations to be true.

In an October 14, 2011, sentencing hearing, the trial court suspended imposition of a sentence on appellant and, instead, placed him on five years of supervised probation, including one year in county jail.

Appellant filed a timely notice of appeal on November 21, 2011.

### III. DISCUSSION

As noted above, appellant's principal contention is that the two counts on which he was convicted are "mutually exclusive" and, therefore, one of his two convictions should be stricken. We disagree, for the reasons which follow.

Count 1 of the information alleged that appellant had violated section 273a, subdivision (a), thusly: "On or about 12/28/2010, Gregory David Colver Jr. did willfully and unlawfully, under circumstances or conditions likely to produce great bodily harm or death, cause or permit a child(ren) to suffer or inflicted unjustifiable physical pain or mental suffering, or having the care or custody of said child(ren), caused, or permitted the person or health of said child(ren) to be placed in such a situation that his/her person and health was endangered, in violation of Penal Code section 273a(a), a felony."

Count 2 then charged: "On or about 12/28/2010, Gregory David Colver Jr. did willfully and unlawfully inflict cruel or inhuman corporal punishment or injury, resulting

5

in a traumatic condition, upon a child, to wit: John Doe, age 17 months old [,] in violation of Penal Code section 273d, a felony."

After the evidence was completed, the court instructed the jury regarding the elements of the two crimes charged. As to the first count, the one alleging a violation of section 273a, it stated, in relevant part: "To [p]rove that the defendant is guilty of this crime [section 273a, subdivision (a)], the People must prove that, one, the defendant while having care or custody of a child willfully caused or permitted the child to be placed in a situation where the child's person or health was in danger. [¶] And, two, the defendant caused or permitted the child to suffer or be injured under circumstances or conditions likely to produce great bodily injury or death. [¶] And, three, the defendant was criminally negligent when he caused or permitted the child to suffer or be injured. [¶] And, four, the defendant did not act while reasonably disciplining a child. Someone commits an act willfully if he or she does it willingly or on purpose."

As to the second count, i.e., the count charging a violation of section 273d, the court instructed the jury that: ". . . [T]he People must prove that, one, the defendant willfully inflicted cruel or inhuman physical punishment or injury on a child. And, two, the punishment or injury inflicted by the defendant caused a traumatic physical condition to the child. And, three, when the defendant acted, he was not reasonably disciplining a child."

As noted above, the jury convicted appellant on both counts. This was error, appellant contends, because (1) "[t]he prosecution expressly elected to proceed on the direct infliction branch of child abuse" but (2) the jury was instructed only on indirect infliction branch of section 273a, subdivision (a), because of the language used in the instruction it was given regarding the first count. Thus, according to appellant, although "[n]o court has expressly stated that the direct and indirect infliction of child abuse constitute mutually exclusive offenses," because "an omission is not an act . . . [¶] . . . Colver should not have been convicted of both passive conduct (count 1) and active conduct (count 2) based on the same facts."

6

One of our sister courts has explained the differences in the four offenses specified in section 273a thusly: "Section 273a, subdivision (a) 'is an omnibus statute that proscribes essentially four branches of conduct.' ([*People v.*] *Sargent* [(1999)] 19 Cal.4th [1206,] 1215.) These four branches or prongs are: ' "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered . . . ." ' (*People v. Valdez* (2002) 27 Cal.4th 778, 783 (*Valdez*).) [¶] In addressing these four separate types of conduct, our Supreme Court describes the second category as 'direct infliction' and the first, third and fourth categories as 'indirect infliction.' (*Valdez, supra*, 27 Cal.4th at p. 786, italics omitted.) Under *Sargent*, the appropriate mens rea for the second category of direct infliction is general criminal intent, similar to battery or assault with a deadly weapon. (*Sargent, supra*, 19 Cal.4th at p. 1220.) Under *Valdez*, the necessary mens rea for the other three categories of indirect infliction is criminal negligence. (*Valdez, supra*, at p. 789.) In addressing indirect infliction, the *Valdez* court concluded, 'criminal negligence is the appropriate standard when the act is intrinsically lawful . . . but warrants criminal liability because the surrounding circumstances present a high risk of serious injury. Criminal negligence is not a "lesser state of mind"; it is a standard for determining when an act . . . is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances.' (*Id*. at pp. 789-790.) Thus, this standard applies to the first, third and fourth prongs of section 273a, subdivision (a), where indirect infliction of harm on a child has occurred, such as failing to seek medical treatment, child endangerment, or willfully permitting situations that imperil children. (*Sargent, supra*, at p. 1218.)" (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1444-1445, fn. omitted.)

However, the fact that, under the terminology used in *In re L.K.* and by our Supreme Court in *Valdez*, one of appellant's convictions pertained to a charged indirect

infliction of harm while the other, i.e., his conviction under count 2 of violating section 273d may have pertained to a more direct infliction of harm, does not make these offenses "mutually exclusive."

In the first place, appellant acknowledges that "[n]o court has expressly stated that the direct and indirect infliction of child abuse constitute mutually exclusive offenses." Second, in his reply brief, he concedes that the Attorney General's argument that they are not, as a matter of law, mutually exclusive "is superficially compelling." Third, the concept of "mutually exclusive" offenses has apparently been recognized rarely in California criminal law, e.g., a defendant cannot be convicted of being both a "principal" in a felony conviction and also an accessory after the fact. (See *People v. Prado* (1977) 67 Cal.App.3d 267, 273.) As our Supreme Court has noted, even theft and the receipt-of-stolen-goods convictions are not "mutually exclusive." (*People v. Price* (1991) 1 Cal.4th 324, 464; see also *People v. Ceja* (2010) 49 Cal.4th 1, 6.) Fourth, this is far from the only case in which a defendant has been convicted of *both* violations of sections 273a and 273d. (See *Sargent, supra,* 19 Cal.4th at pp. 1219-1220, and cases cited therein.)

Fifth and finally, in a case relied upon by the Attorney General, but not discussed or even cited by appellant, the court made clear why a defendant may properly be found guilty of violating both sections 273a and 273d: they are directed to different types of offenses. In *People v. Moussabeck* (2007) 157 Cal.App.4th 975, 981 (*Moussabeck*), the defendant was convicted of one count of misdemeanor child abuse under section 273a, subdivision (b), and one count of felony infliction of physical injury on a child under section 273d, subdivision (a). On appeal—although apparently not specifically asserting a "mutually exclusive" argument—the defendant contended that he could not have properly been convicted of both offenses because the former was a lesser included offense of the latter.

The court rejected this argument and, in so doing, explained the difference between the focus of the two statutes: "Sections 273a and 273d have different elements. The former criminalizes child endangerment or the unjustifiable infliction of pain or suffering upon a child, while the latter criminalizes the infliction of a traumatic condition

8

(i.e., physical injury) upon a child. Moussabeck contends that when one inflicts a physical injury upon a child, he necessarily inflicts physical pain or mental suffering, i.e., injury 'equates' to pain and suffering. Although that may often be the case, we cannot say that is necessarily *always* the case. And just because the same act of child abuse under any given set of circumstances is criminal under both sections 273a and 273d, does not mean the former is a lesser included offense of the latter. A defendant may be charged with and convicted of multiple offenses based upon the same act or course of conduct (§ 954), although he may not be punished more than once (§ 654)." (*Moussabeck, supra,* 157 Cal.App.4th at p. 981.)[2]

Appellant cites no authority even slightly at odds with this statement of the law. We thus conclude that there was no error in the trial court's instructions to the jury or in the jury's verdict, regarding the two counts charged against appellant.

Appellant's second contention is that the trial court erred in failing to inquire into his ability to pay the probation supervision costs mandated by section 1203.1b.

At the October 14, 2011, sentencing hearing, the trial court, contrary to the recommendation of the probation department, determined that appellant should be granted probation. In the course of so doing, it imposed several fines and fees upon appellant, including a $75 monthly probation supervision fee pursuant to section 1203.1b. Appellant argues that such an imposition was unjustified, because neither the probation department nor the trial court made any inquiry as to his ability to pay such a fee.

It is true the probation department did not inquire into that issue, for the simple reason that it did not recommend probation; rather, it's position was that appellant should be sent to prison. But the trial court determined otherwise and, at the sentencing hearing where appellant was represented by counsel, no objection was made to any of the terms and conditions of probation imposed by the court, including the probation supervision

---

[2] Also noting differences between the focus of the two statutes is *People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1160. In any event, it "is well settled that, as a general rule, inherently inconsistent verdicts are allowed to stand." (*People v. Lewis* (2001) 25 Cal.4th 610, 656; see also *People v. Avila* (2006) 38 Cal.4th 491, 600.)

9

fee.  Appellant explicitly accepted those terms, and his counsel confirmed that she had advised him of his rights.  Thus, under this court's decision in *People v. Valtakis* (2003) 105 Cal.App.4th 1066, appellant's objection on appeal to the imposition of the probation supervision fee has been waived.  (See also *People v. Phillips* (1994) 25 Cal.App.4th 62, 70.)

## IV. DISPOSITION

The conviction and the sentence imposed are both affirmed.

_____

Haerle, Acting P.J.

We concur:

_____

Lambden, J.

_____

Richman, J.