Filed 5/31/13  P. v. Brown CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALVIN E. BROWN,<br><br>    Defendant and Appellant. | A134696<br><br>(Contra Costa County<br>Super. Ct. No. 51105592) |
| PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ALVIN E. BROWN,<br><br>    Defendant and Respondent. | A134697<br><br>(Contra Costa County<br>Super. Ct. No. 51105592) |

Defendant Alvin E. Brown and the People appeal a judgment following jury trial, in which defendant was convicted of several serious felonies and sentenced to a determinate prison term totaling over 29 years.  Defendant contends substantial evidence does not support his conviction for felony child abuse (Pen. Code, § 273a, subd. (a)),[1] and further claims the court erred in imposing a consecutive sentence for his conviction for false imprisonment by violence (§§ 236, 237, subd. (a)).  The People urge the trial court erred in striking two of the three strikes alleged and proved against defendant. We affirm.

---

[1]  All further statutory references are to the Penal Code.

1

## BACKGROUND[2]

An information filed April 21, 2011—as subsequently amended and presented to the jury—charged defendant with the following offenses committed against Erica McCoy on October 3, 2010: attempted murder (§§ 187, subd. (a), 664, subd. (a)) (count 1); assault with a deadly weapon (§ 245, subd. (a)(1)) (count 2); and false imprisonment by violence (§§ 236, 237, subd. (a)) (count 3). Each of these counts included enhancements for use of a deadly weapon (§ 12022, subd. (b)(1)) or inflicting great bodily injury (§ 12022.7, subd. (a)), or both. The information additionally charged defendant with child abuse likely to produce great bodily harm (§ 273a, subd. (a)), committed against McCoy's then four-year-old son, who was present when defendant attacked McCoy. The information also included other charges and alleged sentencing enhancements, including that defendant had three strikes and two serious prior felonies (§§ 667, 1170.12).

On October 5, 2011, the jury found defendant guilty of counts 1 through 4. Defendant waived jury trial on the prior felonies, which the trial court subsequently found to be true.

Four months later, on February 3, 2012, the trial court sentenced defendant. It commenced by partially granting his *Romero* motion[3] and striking two of defendant's "strikes." It then imposed a total determinate term of 29 years four months: 14 years on count 1 (seven-year midterm doubled, plus three years great bodily injury, plus one year deadly weapon); stay of sentence on count 2; one year four months on count 3, consecutive (one-third the midterm doubled); eight years on count 4, concurrent.

Defendant and the People each appealed. (See §§ 1237, subd. (a), 1238, subd. (a)(10).)

---

[2] We provide only a summary of the case here, and discuss the facts and circumstances of the crimes in further sections of this opinion addressing defendant's arguments on appeal.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530.

DISCUSSION

## I. *Conviction for Child Abuse*

Defendant contends his attack on McCoy was not likely to cause her son great bodily injury and therefore the evidence is insufficient to support his conviction for child abuse under section 273a, subdivision (a).

"In determining the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment for substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that any rational trier of fact could find the allegation true beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 . . . .) '[We] presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.]' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 . . . .) If the circumstances reasonably justify the fact finder's findings, a contrary finding reasonably reconciled with the circumstances does not warrant reversal of the judgment. (See *People v. Bean* (1988) 46 Cal.3d 919, 933 . . . ; *In re George T.* (2004) 33 Cal.4th 620, 631 . . . .)" (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1446.)

"Section 273a, subdivision (a) 'is an omnibus statute that proscribes essentially four branches of conduct.' ([*People v.*] *Sargent*[ (1999)] 19 Cal.4th [1206,] 1215 . . . .) These four branches or prongs are: ' "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered . . . ." ' (*People v. Valdez* (2002) 27 Cal.4th 778, 783 . . . (*Valdez*).)" (*In re L.K., supra*, 199 Cal.App.4th at pp. 1444–1445.)

"In addressing these four separate types of conduct, our Supreme Court describes the second category as 'direct infliction' and the first, third and fourth categories as

3

'indirect infliction.' (*Valdez, supra*, 27 Cal.4th at p. 786, italics omitted.) Under *Sargent*, the appropriate mens rea for the second category of direct infliction is general criminal intent, similar to battery or assault with a deadly weapon. (*Sargent, supra*, 19 Cal.4th at p. 1220.) Under *Valdez*, the necessary mens rea for the other three categories of indirect infliction is criminal negligence. (*Valdez, supra*, at p. 789.) In addressing indirect infliction, the *Valdez* court concluded, 'criminal negligence is the appropriate standard when the act is intrinsically lawful . . . but warrants criminal liability because the surrounding circumstances present a high risk of serious injury. Criminal negligence is not a "lessor state of mind"; it is a standard for determining when an act . . . is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances.' (*Id.* at pp. 789–790.) Thus, this standard applies to the first, third and fourth prongs of section 273a, subdivision (a), where indirect infliction of harm on a child has occurred, such as failing to seek medical treatment, child endangerment, or willfully permitting situations that imperil children. (*Sargent, supra*, at p. 1218.)" (*In re L.K., supra*, 199 Cal.App.4th at pp. 1445–1446.)

These authorities dispense with defendant's assertion that he could not be convicted of felony child abuse because he physically assaulted and injured only McCoy, and did not directly harm her four year old son. The statute is " ' is "intended to protect a child from an abusive situation in which the probability of serious injury is great." [Citation.] "[T]here is no requirement that the actual result be great bodily injury." [Citation.]' [Citation.]" (*Valdez, supra,* 27 Cal. 4th at p. 784.)

Turning to the evidence, McCoy and her son were visiting defendant at his home, when defendant, sitting next to McCoy, suddenly stabbed her in the upper abdomen with a knife and then pulled the blade downward to just above her naval. The child was within arm's reach of McCoy, and her first thought was defendant was trying to kill her in front of her son. When defendant pulled the knife out, McCoy's "guts came out" and she began bleeding. Defendant put the knife down on a TV tray next to McCoy, and then forced McCoy into another room and partially closed the door. The boy tried to follow his mother, but defendant pushed the child away, and said, " Get out of here.' " McCoy

4

could hear her son yelling "Mommy." Although defendant partially tied her hands and she was bleeding profusely, McCoy managed to escape through a window. Defendant followed her through the window and began beating her. A police officer responding soon afterward found the child standing in front of defendant's residence, crying. The boy pointed to his mother, who by then was lying on her back on the sidewalk. McCoy sustained life threatening injuries, and during the two-and-a-half weeks she was in the hospital, her mother cared for the child. During that time, "his personality . . . completely changed." He cried a lot, was very quiet, and displayed aggressive temper tantrums.

This evidence is more than sufficient to establish that defendant "willfully caused" McCoy's son to "suffer unjustifiable mental suffering" under "circumstances or conditions likely to produce great bodily harm" to the child. The four year old was essentially in the midst of the knife attack on his mother. He was in arm's length of McCoy, and defendant could easily have struck the child had he lost his balance himself, or been thrown off balance by any effort by McCoy to fight back. Then, defendant put the bloodied knife down on a TV table, within easy reach of the four-year old. He then knocked the child aside as he forced the bleeding and gutted McCoy into another room, leaving the terrified child, calling for his mother, within reach of the knife.

"The felony child abuse statute 'was enacted in order to protect the members of a vulnerable class from abusive situations in which serious injury or death is likely to occur.' " (*People v. Toney* (1999) 76 Cal.App.4th 618, 622.) Such were the circumstances here. (See *People v. Pantoja* (2004) 122 Cal.App.4th 1, 3, 15–16 [reversing conviction, but also rejecting section 654 sentencing argument and holding defendant convicted of first degree murder and child endangerment after killing his girlfriend in the presence of their daughter could be separately punished for murder and child endangerment; there was "no doubt that defendant's acts harmed [the daughter]" and defendant could be "punished separately for that separate crime" of violence].)

## II. *Consecutive Sentence for False Imprisonment Conviction*

Defendant also contends the trial court abused its discretion in imposing a consecutive, rather than concurrent, sentence for his false imprisonment conviction.

Citing California rules of court, rule 4.425, subdivision (a)(3), he asserts "the false imprisonment offense occurred so closely in time to the attempted murder that it was committed during a single period of aberrant behavior."

Our standard of review is well established. We will not disturb the trial court's exercise of discretion in sentencing unless, all circumstances being considered, it is clear the court decision exceeded the bounds of reason. (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

California Rules of Court, rule 4.425, sets forth "[c]riteria affecting the decision to impose consecutive rather than concurrent sentences . . . ." This includes "whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules Ct., rule 4.425, subd. (a).)

The trial court did not abuse its discretion in viewing the attempted murder and subsequent false imprisonment as sufficiently separate to warrant consecutive sentences. The offenses occurred in different areas of the house, and involved different conduct. As discussed above, the defendant, after stabbing McCoy, removed the knife from her gut and set it down, took her into a separate room, and there attempted forcibly to bind her hands, with partial success, as she bled profusely. The attempted murder may well be deemed to have involved conduct and objectives predominantly independent of the false imprisonment, and most certainly they involved separate acts of violence. (Cal. Rules of Court, rule 4.425(a)(1), (2).) Accordingly, there was no abuse of discretion imposing a consecutive sentence.

## III. *Striking Two of the Three Strikes*

Pursuant to section 1385 and in the interest of justice, the trial court struck two of the three strikes against defendant. (See *Romero, supra,* 13 Cal.4th at pp. 529–530.) The People urge this was error, in that the trial court based its decision solely on the

6

"remoteness" of the two prior convictions, without considering defendant's entire criminal history.

On this sentencing issue, too, we review the trial court's decision for abuse of discretion. (*Romero, supra,* 13 Cal.4th at p. 531.) The court based its decision not only on the remoteness of the two older convictions, but also their lack of *similarity* to the present offenses. Specifically, the court struck two prior 1985 convictions for robbery and attempted robbery, but retained the third strike—a 1989 conviction for assault with great bodily injury—because it *was* similar to the present offenses. While striking the robbery priors may be a debatable proposition, we certainly cannot say the trial court's perspective on the matter "exceeded the bounds of reason." We therefore conclude there was no abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

7