Filed 7/27/23  In re Joan H. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re JOAN H. et al., Persons Coming Under the Juvenile Court Law. | B320457 (Los Angeles County Super. Ct. Nos. 22CCJP00842A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN H.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Juan H. (father) appeals the juvenile court's exertion of dependency jurisdiction over his two young children on the ground that it is unsupported by the record.  The Los Angeles Department of Children and Family Services (the Department) argues that the juvenile court's subsequent termination of jurisdiction renders father's appeal moot.  Although we exercise our discretion to reach the merits of father's appeal, we conclude that the court's exercise of jurisdiction was supported by substantial evidence.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Father and Claudia E. (mother) have two children—namely, Joan H. (born 2018) and Santiago H. (born 2021).  Joan suffers from autism and, at the time of the incident giving rise to the exertion of jurisdiction, was nonverbal.

On a Monday in late February 2022, Santiago was admitted to the hospital for a skull fracture with some internal bleeding.  A doctor specializing in child abuse opined that the severity of the injury would be "consistent with an accidental fall"

2

of three to four feet or with intentional blunt force trauma, and estimated that the incident occurred approximately three but not more than four days prior.

The parents' explanations for Santiago's injury were not consistent.

Mother's story changed over time. Mother initially reported that she had no idea how Santiago was injured, and merely gave an accounting of Santiago's whereabouts over the weekend before the injury—namely, that the maternal grandmother babysat Santiago on Saturday, that the family attended an outdoor wedding on Saturday night while Santiago spent half an hour asleep on the sofa inside, and that the family on Sunday attended a family gathering where Santiago played outside. After mother was told that the absence of an explanation meant that Santiago was likely to be removed from her custody, mother reported that Santiago fell a few inches from a foam mattress pad to a hardwood floor sometime in the week before the hospital visit. The doctor opined that the injury Santiago suffered "could not have been caused" by a fall of such a relatively small height. During a lie detector test administered by police investigating Santiago's injury, mother reported that she had left the children with father for about 90 minutes on the day before they brought Santiago to the hospital and, when she returned, Santiago was crying and father appeared nervous. She also reported that it was father who first pointed out the bump on Santiago's head that day.

Father's story also changed over time. Like mother, father initially reported that he had no idea how Santiago was injured. After mother reported that she had left the children in father's care, father admitted that he had watched the children, but

3

reported that Santiago had hit his head on a slat of his crib while flailing around. The doctor opined that this incident would not have caused such a severe injury. Father later reported that, after she arrived home, mother had "bumped" Santiago's head with her knee.

Although the local police opened and conducted an investigation, prosecutors elected not to charge either parent with child abuse. One investigating officer shared her opinion that it was still unclear how Santiago was injured, or even if it was accidental or intentional, because "[m]any hands" had been on Santiago in the days surrounding his injury.

## II. Procedural Background

### A. *The Department files a petition*

On March 7, 2022, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Joan and Santiago on the ground that Santiago's injury was the type of injury that "would not ordinarily occur except as a result of deliberate, unreasonable and neglectful acts on the part of the mother and father who had care, custody and control" of him, which "endanger[s]" Santiago's "physical health, safety and well-being" and "create[s] a detrimental home environment and place[s]" both children "at risk of serious physical harm, damage and danger." The petition alleged that dependency jurisdiction was warranted under subdivisions (a), (b)(1), and (j) of section 300 of the Welfare and Institutions Code.[1] The petition also alleged that the Department would be relying on the statutory presumption set forth in section 355.1, subdivision (a)—namely, that a juvenile court must presume jurisdiction is proper under

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

subdivisions (a) or (b) of section 300 if the Department presents "competent professional evidence" that a child's injury "is of a nature" that would "not be sustained except as the result of the unreasonable or neglectful acts or omissions" by a parent. (§ 355.1, subd. (a).)

On March 10, 2022, the juvenile court held the detention hearing. The court found a prima facie case that the children were persons described by section 300, placed them with mother on the condition that father move out of the house, and granted father monitored visitation (but allowed mother to serve as the monitor).

**B.** *The juvenile court sustains the petition in part*

On May 11, 2022, the juvenile court held the jurisdictional and dispositional hearing. After hearing argument, the court sustained the allegation under subdivisions (b)(1) and (j) (but not subdivision (a)), and modified the allegation slightly to provide that Santiago's injury was the type of injury that "would not ordinarily occur except as the result of deliberate, unreasonable *or* neglectful acts on the part of the mother and father who had care, custody and control of the child." The court returned the children to the custody of both parents and allowed father to return to the home, but implemented safety measures including authorizing the Department to make unannounced visits and ordering the parents to make the children available to the Department during those visits.

**C.** *Father appeals*

Father filed this timely appeal.

5

**D.**    *The juvenile court terminates jurisdiction*

After six months of services, the juvenile court on November 9, 2022, terminated dependency jurisdiction over the children.

## DISCUSSION

Father argues that the juvenile court's jurisdictional finding is not supported by the record. As a threshold matter, the Department argues that father's appeal became moot once the juvenile court terminated its dependency jurisdiction over the children. Although the Department is correct that this appeal is moot because all restrictions placed on the family while the court exerted dependency jurisdiction are no longer in effect, we have discretion to entertain father's challenge anyway and elect to exercise that discretion here because the jurisdictional finding as to father may prejudicially affect him in future dependency proceedings. (*In re D.P.* (2023) 14 Cal.5th 266, 285 (*D.P. (2023)*) ["Courts may consider whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or "'could have other consequences for [the appellant], beyond jurisdiction"'"]; *ibid.* ["A prior jurisdictional finding can be considered by the Department in determining whether to file a dependency petition or by a juvenile court in subsequent dependency proceedings"].)

The juvenile court's exercise of jurisdiction in this case rests on two provisions—namely, subdivisions (b)(1) and (j) of section 300. Because subdivision (j) provides a basis for exerting dependency jurisdiction over a child when a sibling has been abused or neglected (§ 300, subd. (j); *In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*)), the propriety of jurisdiction over Joan pursuant

6

to subdivision (j) turns on whether jurisdiction is appropriate over Santiago pursuant to subdivision (b)(1).  In pertinent part, subdivision (b)(1) of section 300 authorizes a court to exercise dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child."  (§ 300, subd. (b)(1).)

Although our task in assessing whether a jurisdictional finding is unsupported typically requires us to examine whether the Department has adduced substantial evidence to support the court's jurisdictional finding (*I.J.*, *supra*, 56 Cal.4th at p. 773), our task in this case is a little different.  That is because the Department, after giving advance notice, relied on the presumption set forth in section 355.1, subdivision (a).  This provision provides:

> "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of [s]ection 300."

(§ 355.1, subd. (a).)  This presumption is one affecting the "burden of producing evidence."  (*Id.*, subd. (c).)  Thus, once the Department provides "competent professional evidence" that a child suffered an injury that would "ordinarily not be sustained"

7

in the absence of "unreasonable or neglectful acts or omissions" of the parents, the burden "'shifts to the parents'" to "'raise[] an issue *as to the actual cause of the injury* or the fitness of the home.'" (*In re D.P.* (2014) 225 Cal.App.4th 898, 903 (*D.P. (2014)*); *In re G.Z.* (2022) 85 Cal.App.5th 857, 885-886 (*G.Z.*); *D.P. (2023), supra*, 14 Cal.5th at p. 274.) Once a parent ""produces some quantum of evidence casting doubt on the truth of the presumed fact"" by "'introduc[ing]'" "'evidence'" "'which would support a finding of [the] nonexistence [of the presumed fact],'" the presumption ""disappears, leaving it to the [Department] . . . to prove"" the facts necessary for jurisdiction. (*G.Z.*, at pp. 884-886; Evid. Code, § 604 [defining "presumption[s] affecting the burden of producing evidence"].) Thus, this type of presumption is colloquially referred to as a "bursting-bubble presumption": Once sufficient evidence is introduced to counter it, the presumption's bubble bursts and disappears entirely. Our Legislature created this bursting-bubble presumption as a means of preventing families from "stonewall[ing] the Department and its social workers concerning the origin of a child's injuries and escap[ing] a jurisdictional finding . . . ." (*In re E.H.* (2003) 108 Cal.App.4th 659, 670.)

We conclude that the juvenile court's exercise of dependency jurisdiction over Santiago—and, under subdivision (j), Joan—is proper for two reasons.

First, the Department appropriately relied on the presumption in subdivision (a) of section 355.1, and the parents did not adduce sufficient evidence to burst its bubble. The presumption was appropriately applied in the first instance because the Department introduced competent expert testimony from doctors that Santiago's injury was either caused by

8

intentional blunt force trauma or by a fall from a height of three to four feet.  This is substantial evidence of an injury that "would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions" of the parents, who admitted to having Santiago in their care and custody at the likely time of his injury.  (§ 355.1, subd. (a).)  Unless rebutted, the presumption is "prima facie evidence" that jurisdiction was appropriate under subdivision (b) of section 300.  (*Ibid.*)

Mother and father did not thereafter introduce any evidence that would "support a finding of" an alternative cause of Santiago's injury.  They offered a barrage of inconsistent accounts of how Santiago was injured, none of which would cause the type of injury he actually sustained.  They also did not introduce any contrary expert testimony that any of their proffered causes could have actually caused that injury.  Instead, mother and father introduced evidence that (1) neither the pertinent charging authority nor the investigating officer felt that they should be *criminally* prosecuted for child abuse, in part because Santiago was in "many hands" the weekend he was injured, and the investigator did not even require father to sit for a lie detector examination; (2) mother and father were church-going individuals who did not use alcohol or drugs, had no reported history of domestic violence, no reported history of mental illness, and no reported child welfare history; (3) father had a good relationship with Joan; and (4) the juvenile court opted not to remove the children from the parents' custody at the dispositional hearing.  This evidence did not rebut the presumption.  To begin, this evidence did not raise any issue as to the actual cause of the injury.  At most, it was evidence regarding the general fitness of the home, but the juvenile court acted

9

within its discretion in finding that it was too ephemeral to "'support a finding'" of the "'nonexistence of the presumed fact'" of injury or risk of injury. (*G.Z.*, *supra*, 85 Cal.App.5th at p. 884.) The opinion of the prosecuting authority is of little to no weight because criminal prosecutions have a higher burden of proof; what is more, child abuse crimes require proof of intentional or criminally negligent conduct, standards higher than the negligence required in dependency cases. (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1445; Pen. Code, § 273a, subd. (a).) Along similar lines, the juvenile court's decision not to remove the children does not somehow undercut its jurisdictional finding; removal requires proof of substantial danger to a child by clear and convincing evidence (§ 361, subd. (c)); jurisdiction requires proof by a preponderance of the evidence (§ 355). The parents' status as "first-timers" in the dependency system and otherwise upstanding members of their community, while commendable, are not relevant to explain the cause of Santiago's injury; the same is true of father's good relationship with Joan. Neither is evidence that rebuts the presumption.

Second, and even if we assume that mother and father adduced sufficient evidence to counter—and hence dispel—the presumption, substantial evidence still supports the juvenile court's ruling, even if the burden of proof remained on the Department. Here, there was expert medical testimony that Santiago's injuries were caused either by intentional blunt force trauma or a fall from a substantial height due to parental negligence. The record also contained evidence that father watched Santiago for 90 minutes, that Santiago was crying and father looked nervous at the end of that period, that father sometimes became frustrated with the children, and that neither

10

father nor mother was forthcoming about father's "solo" supervision or these other facts. (See *D.P. (2014)*, *supra*, 225 Cal.App.4th at pp. 904-905 [even without presumption, professional opinion of expert still creates an "inference" of injury and risk, which, combined with other evidence, can support a finding of jurisdiction].)  The parents' contrary evidence—detailed above—at best created a conflict in the evidence, but we must defer to the juvenile court's resolution of those conflicts when conducting substantial evidence review.   (*I.J.*, *supra*, 56 Cal.4th at p. 773; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)

Father resists this conclusion with what boils down to three arguments.  His chief argument in his opening brief is that the Department did not affirmatively prove that *he* injured Santiago and did not prove that Santiago was at risk of harm.  This argument completely ignores the operation of the presumption in section 355.1, subdivision (a), which establishes a prima facie case for jurisdiction under section 300, subdivision (b)—a case that *includes* proof of both injury *and* risk.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 [subdivision (b) "consists of three elements: (1) neglectful conduct by the parent  . . ; (2) causation; and (3) 'serious physical harm . . .' to the minor, or a 'substantial risk' of such harm . . .'"], abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622.)  Thus, the fact that the Department did not *affirmatively prove* these elements is irrelevant because they were satisfied by the unrebutted presumption.

Second, father argues that the juvenile court's orders at the detention hearing releasing the children to mother's custody (with monitored visitation for father) "cannot be reconciled" with a conclusion that substantial evidence supports the finding that Santiago's injury was caused by parental negligence and that the

11

court's decision to not remove the children at the dispositional hearing supports his assertion that jurisdiction was inappropriate.  As we pointed out, the required showings for the assertion of jurisdiction and removal are different; if father's argument were valid, every case in which a juvenile court found jurisdiction proper would necessarily require removal.  This is obviously not the law.

Third, father argues that the juvenile court only exerted jurisdiction because "it believed that [the] parents would benefit from counseling and parenting classes."  This mischaracterizes the record.  To be sure, the court required the parents to participate in services, but those services were part of their comprehensive case plans, which included requiring them to make the children available to the Department and the minors' counsel, to allow the Department to make unannounced visits to the home, and to comply with medical appointments for the children.

**DISPOSITION**

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____,  P. J.
LUI


_____, J.
ASHMANN-GERST

13