Filed 6/24/24  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID FRANK HERNANDEZ,<br><br>    Defendant and Appellant. | F085820<br><br>(Super. Ct. No. 2066053)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cordova, Judge.

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant David Frank Hernandez used his truck to chase and intentionally collide with a car occupied by Luis, his wife, and two children. A jury convicted defendant of four counts of assault with a deadly weapon and two counts of child abuse likely to produce great bodily injury. The court sentenced defendant to a suspended five-year prison term, a two-year term of probation, and one year in county jail.

Defendant appeals, arguing that the evidence is insufficient to prove that he was aware the children were passengers in Luis's car when he intentionally hit it and he was prejudiced when the trial court erroneously included a rejected instruction (relating to an aggravating sentencing factor) in the written jury instructions provided to the jury during deliberations. We affirm the judgment.

# PROCEDURAL BACKGROUND

The District Attorney of Stanislaus County filed a second amended information on September 20, 2022, charging defendant with four counts of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); counts I–IV) and two counts of child abuse likely to produce great bodily injury (§ 273a, subd. (a); counts V, VI). The second amended information also alleged the aggravating circumstance that defendant engaged in violent conduct that indicates a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)). Defendant pleaded not guilty to all counts.

On September 22, 2022, a jury convicted defendant of all counts. Defendant filed a motion for new trial and argued that he was prejudiced because a jury instruction titled, in part, "Factor in Aggravation" (some capitalization and boldface omitted) had erroneously been included in the written jury instructions provided to the jury during deliberations. The trial court denied the motion for new trial on January 31, 2023,

---

[1] Undesignated statutory references are to the Penal Code.

sentenced defendant to a suspended five-year prison term,[2] admitted him to a two-year term of probation, and ordered him to serve one year in county jail. The court also ordered defendant to pay victim restitution (§ 1202.4, subd. (f)), a $300 restitution fine (§ 1202.4, subd. (b)), a suspended $300 probation revocation restitution fine (§ 1202.44), $120 in criminal conviction assessments (Gov. Code, § 70373), and $160 in court operations assessments (§ 1465.8, subd. (a)(1)).

Defendant timely appealed on February 27, 2023.

## FACTS

Luis P. and his wife, Brenda M., were acquainted with defendant. In 2016, defendant was angry with Luis because of text messages Luis sent to defendant's wife. On July 4, 2016, at approximately 11:13 p.m., Luis was driving home in his car, accompanied by Brenda (his pregnant wife), A.O. (his six-year-old son), and B.P. (his four-year old daughter). While at an intersection, Luis and Brenda noticed defendant's truck stopped next to their car. Defendant got out of his truck, opened the front passenger door of Luis's car, and grabbed Brenda's arm. Luis accelerated and drove into the intersection despite the light being red.

Luis continued driving, turning onto various streets, but defendant followed. After turning onto another street, defendant rear-ended Luis's car with the front of defendant's truck, but Luis kept control of his car and continued to drive. While turning onto another street, defendant again hit Luis's car on the rear right passenger side door, which caused the car to spin. Luis then pulled over as police had arrived.

Defendant's truck hit Luis's car three times as if to run Luis off the road. During the chase, Luis estimated he was traveling 50 to 60 miles per hour. Luis testified that the children were in the back seat during the incident; B.P. cried and A.O. was scared.

---

[2]  The court sentenced defendant to the lower term of two years in prison as to count I, consecutive one-year prison terms as to counts II–IV, and two years in prison as to counts V and VI (stayed pursuant to § 654).

3.

Brenda testified that both children cried during the incident. Luis observed dents to the right and rear sides of his car. The trunk would not close and had holes.

Luis testified that the windows of his car were tinted. Luis and Brenda testified that Luis never used his car to strike defendant's tuck.

Lieutenant Ian Dimburg, employed with the Stanislaus County Sheriff's Office, was on duty on July 4, 2016. At approximately 11:13 p.m., he saw defendant's truck veer into the right side of Luis's car and hit it. Luis's car then veered in an uncontrolled manner and accelerated. Defendant's truck pulled in behind Luis's car and rear-ended it. Dimburg activated his emergency lights and stopped defendant.

Defendant told Dimburg that an individual in the car had been yelling at defendant and, while trying to catch up to the car, he lost control and hit it. Defendant later told Dimburg that he knew the occupants of the car and did not get along with the driver because the driver was cheating with defendant's wife. Defendant then claimed that while stopped at an intersection, the occupants of the car yelled at him, and as he followed them, the driver of the car braked several times and caused defendant to rear-end them. However, defendant denied the collision that Dimburg witnessed.

Dimburg identified photographs showing damage to the lower front part of defendant's truck consistent with his observation of the truck colliding with the car.

Defendant testified that he was stopped at an intersection and noticed the occupants of the car next to him making a lot of hand gestures. The driver got out of his car and approached defendant's window. The driver punched the side door of defendant's truck and then got back into his car and drove away. Defendant got out of his truck and, after observing the damage caused by the other driver, chased the car.

Defendant never really caught up to the car but, at one point, defendant was very close to the car as it turned right. Defendant turned behind it, but both vehicles hit gravel, lost control, started sliding, and spun around. Defendant never tried to hit the car and did not feel any impact. Defendant also testified that he did not really know Luis, he did not

4.

tell the officer that Luis cheated with his wife, and he never found text messages from Luis on his wife's telephone.

## DISCUSSION

**I.    *The jury's finding that defendant committed child abuse is supported by sufficient evidence that defendant knew Luis's car was occupied by two children.***

### A.    Applicable Law and Standard of Review

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether it discloses substantial credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  Resolving conflicts and inconsistencies in the testimony is the jury's "exclusive province."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  We do not redetermine the weight of the evidence or the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60; see *Young*, at p. 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."].)

We must accept logical inferences that the trier of fact might have drawn from the evidence even if we would have concluded otherwise.  (*People v. Streeter* (2012) 54 Cal.4th 205, 241, overruled on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Albillar*, *supra*, 51 Cal.4th at p. 60.)

We will reverse for insufficient evidence only if " ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' "  (*People v. Penunuri* (2018) 5 Cal.5th 126, 142; see *People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.) Where "the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139; accord, *Zamudio*, *supra*, 43 Cal.4th at pp. 357–358.)

Section 273a, subdivision (a) " 'is an omnibus statute that proscribes essentially four branches of conduct.' [Citation.] These four branches or prongs are: ' "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered …." ' " (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1444–1445, quoting § 273a, subd. (a).)

The second branch of offenses has been described by our Supreme Court as "direct infliction," whereas the first, third, and fourth branches are "*indirect* infliction." (*People v. Valdez* (2002) 27 Cal.4th 778, 786.) "[W]hen the conduct at issue involves the direct infliction of unjustifiable physical pain or mental suffering on a child," "the defendant must have a mens rea of general criminal intent to commit the proscribed act. In addition, the trier of fact must determine whether the infliction of the unjustifiable physical pain or mental suffering on a child was under circumstances or conditions likely

6.

to produce great bodily harm or death.  If so, the crime is punishable as a felony."
(*People v. Sargent* (1999) 19 Cal.4th 1206, 1224.)

The court instructed the jury as to the elements of the second branch of child abuse likely to produce great bodily harm or death in accordance with CALCRIM No. 821, which provides in pertinent part:  "[T]he People must prove that, one, the defendant willfully inflicted unjustifiable physical pain or mental suffering on a child; two, the defendant inflicted pain or suffering on the child or caused or permitted the child to be suffered to be injured or be in danger under the circumstances or conditions likely to produce great bodily harm or death."  Therefore, the prosecution was required to prove defendant's general intent to commit the proscribed act.  The jury was further instructed that "[s]omeone commits an act willfully when he or she does it willingly or on purpose" and "[a] child is any person under the age of 18."

## B.      Analysis

Defendant challenges the sufficiency of the evidence supporting his conviction on the child abuse charges because he claims that there is insufficient evidence that he knew the children were present in the car.  Defendant relies upon our decision in *In re L.K.*, a case in which a teenager drove over a 17-month-old child.  We concluded that the evidence was insufficient to prove that L.K. directly inflicted unjustifiable physical pain on the child when L.K. ran the child over because the record contained no evidence that L.K. could see the child near the truck, or otherwise knew the child's location when she drove forward.  (*In re L.K.*, *supra*, 199 Cal.App.4th at pp. 1445–1446.)  Because no evidence suggested that L.K. knew that the child was near the truck, the evidence failed to show that L.K. inflicted pain on the child "willingly or on purpose."  (*Id.* at p. 1445.)[3]

---

**3**      We did, however, uphold the verdict based upon an "indirect infliction" of abuse.  (*In re L.K.*, *supra*, 199 Cal.App.4th at p. 1447.)

Defendant acknowledges that the evidence shows that the incident occurred at 11:15 p.m., the children were seated in the back seat of the car, the car had tinted windows, and the children were four and six years old. Relying upon "[c]ommon sense and experience," defendant concludes that the lighting conditions, small stature of the children, and window tint interfered with defendant's ability to discern that children were in the car.

We note that the record is devoid of evidence as to the presence of any streetlights at the intersection where the incident commenced. However, defendant was stopped next to the car and, according to Luis and Brenda, left his truck and opened the front passenger door of the car to grab Brenda's arm while asking Brenda if she was "still with" Luis. The jury could rationally conclude that because defendant left his truck to confront the occupants of the car, defendant was able to see inside the car. Additionally, interior lights in a car come on when a door is opened, and a jury could infer that lights illuminated the interior of the car when defendant attempted to pull Brenda from the car. The jury could further infer that when defendant reached into the car to grab Brenda, he would have had the opportunity to see the children in the back seat through the gap between the driver and passenger areas (over the center console). The jury could also infer that the children were in car seats based upon their age, and that defendant's truck's headlights illuminated the interior of the car when defendant drove closely behind and eventually rear-ended it.

Therefore, circumstantial evidence supports the jury's conclusion that defendant intentionally hit the car knowing that children were inside. Since substantial evidence supports the jury's verdict based on this hypothesis, we cannot reverse for insufficient evidence. (*People v. Penunuri*, *supra*, 5 Cal.5th at p. 142.) Because the circumstances reasonably justify the jury's findings, we may not reverse the judgment just because the circumstances might also support a finding that defendant failed to see the children. (*Zamudio*, *supra*, 43 Cal.4th at pp. 357–358.)

We conclude that sufficient evidence supports the jury's verdict that defendant willfully inflicted pain or suffering on a child under circumstances or conditions likely to produce great bodily harm or death.

## II. *Defendant was not prejudiced by the trial court erroneously attaching an instruction related to an aggravating factor to the written instructions submitted to the jury during deliberations.*

### A. Background

The prosecutor e-mailed proposed instructions to the trial court. After the close of evidence, the court and attorneys had a brief discussion regarding jury instructions, and then the court instructed the jury before closing arguments. The court's verbal instructions did not include an instruction addressing any aggravating factor relevant to sentencing. During deliberations, the jury requested a copy of "the police report" and a transcript of Dimburg's testimony. Thereafter, the jury returned verdicts of guilty as to all charges.

Just after dismissing the jury, the court advised counsel that it noticed that the last page of the written jury instructions provided to the jury included an instruction on a factor in aggravation that the court had not read to the jury. This instruction had been submitted by the prosecution and provides as follows:

> "**FACTOR IN AGGRAVATION: [CALIFORNIA RULES OF COURT, RULE] 4.421(b)(1) VIOLENT CONDUCT INDICATING A SERIOUS DANGER TO SOCIETY**
>
> "The People allege that the defendant has committed the following factor in aggravation, [California Rules of Court, rule] 4.421(b)(1) Violent Conduct indicating a Serious Danger to Society. To prove this allegation, the people must show that when the defendant committed the charged offenses, he engaged in violent conduct that indicates a serious danger to society."

The court explained that it had previously advised counsel that it rejected the instruction because it "didn't think that—based on [defendant]'s lack of prior history, that

9.

[it] would consider an aggravated sentence." This instruction followed an instruction that the court had read only to the alternate jurors (CALCRIM No. 3577) and the final instruction discharging the jury (CALCRIM No. 3590) that was read after the verdict was entered, but both of which were also included in the written instructions. The court acknowledged that it had inadvertently included this instruction as "the very last" page of the written instructions and then recalled the jurors to question them before they left the courthouse.

In response to the court's question, the foreperson of the jury advised that the written instructions were passed among the other members of the jury. The foreperson did not remember reading any of the three final instructions, including the aggravating factor instruction, and the jury did not discuss the instructions in its deliberations. The court then questioned all the other jurors as to whether they had looked at the written instructions and, if they had, whether they read or recalled the last three instructions that had not been read by the court. For the jurors that had reviewed the written instructions, each juror denied reading or recalling the instruction regarding the aggravating factor and reported that they only looked at the instructions for the specific offenses.

The court advised the parties that it had no reason to believe that any juror had read the final three pages of the written instructions, it personally stapled the instructions together, and the staple was still in place. The court found no error occurred.

Defendant later filed a motion for new trial based upon submission of the written aggravating factor instruction to the jury. The trial court denied the motion because it would not presume that the jury considered the instruction and there was no evidence that any juror had either read or considered it.

## B. Standard of Review

Giving an instruction that is correct as to the law but irrelevant or inapplicable is error. (*People v. Cross* (2008) 45 Cal.4th 58, 67 (*Cross*); *People v. Rowland* (1992)

10.

4 Cal.4th 238, 282; see also *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 ["It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case."].) "Nonetheless, giving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' " (*Cross*, at p. 67.)

" 'Under article VI, section 13 of our state Constitution, trial error does not merit reversal of a judgment unless "the error complained of has resulted in a miscarriage of justice." Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result.' " (*People v. Anzalone* (2013) 56 Cal.4th 545, 553; see *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

### C. Analysis

Defendant argues that the trial court erred by allowing the jury to consider the violent and serious danger to society instruction during deliberations after expressly ruling that it would not do so in contravention of section 1093.5, which requires the court to advise counsel of all instructions to be given. The People concede that inclusion of the instruction in the jury's written instructions during deliberations was error. The parties disagree as to whether the error was harmless and the appropriate standard of review.

The parties also disagree on the appropriate standard of review regarding prejudice. Defendant argues the error must be analyzed under *Chapman v. California* (1967) 386 U.S. 18 because the error deprived him of his rights under the federal Constitution. Under *Chapman*, the People bear the burden to establish beyond a reasonable doubt that the error did not contribute to the verdict. (*Id*. at p. 24.) In contrast, the People contend the error is one of state law and prejudice is reviewable under *Watson*, *supra*, 46 Cal.2d 818. Under *Watson*, we ask whether it is reasonably

11.

probable appellant would have received a more favorable result in the absence of the error. (*Id*. at p. 836.) We agree with the People.

Defendant argues that the error deprived him of effective assistance of counsel because defense counsel could not respond to the instruction and his right to a defense because he could not defend against the instruction. However, we reject defendant's argument that the error in this case deprived him of the opportunity to defend against the violent and serious danger to society aggravating factor instruction because the jury was not asked to make this finding in its verdict. It was not necessary for defendant to defend against it, the jury made no finding, therefore, defendant was not denied the effective assistance of counsel when defense counsel did not address the instruction in closing.

We conclude that the court erred in providing the jury with " 'an "abstract" instruction, i.e., "one which is correct in law but irrelevant." ' " (*Cross*, *supra*, 45 Cal.4th at p. 67.) Generally, instructional errors that violate a defendant's due process rights under the federal Constitution relieve the prosecution of proving each element of the offense beyond a reasonable doubt (*People v. Flood* (1998) 18 Cal.4th 470, 491) or create a presumption that shifts the burden of proof to a defendant (*Rose v. Clark* (1986) 478 U.S. 570, 579–580). But the type of error in this case, instructing with an irrelevant point of law, is generally " ' "only a technical error which does not constitute ground for reversal." ' " (*Cross*, at p. 67.) Therefore, we conclude that error should be analyzed under the state law standard.

We agree with the People that it is not reasonably probable that defendant would have received a more favorable result in the absence of the error. (See *Watson*, *supra*, 46 Cal.2d at p. 836.) Both parties acknowledge that the prosecutor did not discuss the aggravating factor in his closing argument and the jury's verdict did not include any finding on it. During deliberations, the jury did not ask any question regarding the instruction, and the jury had been instructed that some instructions may not apply (CALCRIM No. 200) and to disregard them. (See *Cross*, *supra*, 45 Cal.4th at p. 67 [in

addition to legally irrelevant instruction, jury was instructed to disregard instructions where not applicable].)  The court also instructed the jury to consider the offenses separately (CALCRIM No. 3515).  We presume the jury would have followed that instruction and, if they did, would not have applied the aggravating factor instruction when considering defendant's guilt as to either offense.

Significantly, the instruction was located at the back of the written instructions after two instructions not involving issues relating to defendant's culpability for the charges (the conduct of the alternate jurors and the discharge of the jury after verdict).  For the jurors that actually looked at the written instructions, they advised the court that they did not see the aggravating factor instruction and only read the instructions on the elements of the offenses.  Defendant argues that the jurors were not sworn in before being asked about the instructions; we do not agree that the court should not have credited their responses to its inquiries.

Defendant correctly recognizes that we credit jurors with intelligence and common sense and "presume they generally understand and follow the instructions."  (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)  But defendant uses this presumption to conclude that the jury did consider the aggravating factor instruction because it was included in the written instructions.  However, the question for the court was whether the jury had read the erroneous instruction.  The written instructions were provided to the jury for their convenience, but the court had not read the instruction to the jury and did not instruct the jurors to read the written instructions themselves.  We will not presume that they did so, especially in light of the jurors' responses to the court's questions.

However, we apply this presumption in our determination as to whether any juror, having read the aggravating factor instruction, would have used it in evaluating defendant's guilt on the charged offenses.  The jury instructions for child abuse and assault discussed the elements of the offenses and did not include any language remotely similar to the aggravating factor instruction.  The aggravating factor instruction did not

13.

refer to the charged offenses in any manner.  In following the court's instructions, therefore, the jury would not have used the aggravating factor instruction in determining whether the prosecutor had proven defendant guilty beyond a reasonable doubt of the offenses.

Finally, we cannot conclude it is reasonably probable defendant would have obtained a more favorable verdict absent the presentation of such evidence.  (See *Watson*, *supra*, 46 Cal.2d at p. 836.)  We note that even if the jury had attempted to apply the aggravating factor instruction to the charged offenses, it would have added an additional element to each offense and increased the prosecution's burden to prove each offense, making conviction more difficult.  We also agree with the People that if the jury followed the instruction to determine whether defendant's conduct was violent and a serious dangerous to society, they would make that judgment based upon the facts as they found them after evaluating defendant's guilt on the underlying charges.

The evidence against defendant was overwhelming.  Three witnesses testified that defendant deliberately hit the car, including Lieutenant Dimburg who did not know defendant or the victims and had no identifiable reason to lie.  Defendant denied intentionally hitting the car, but defendant's testimony conflicted with his statements to Dimburg at the time of the incident.

Defendant argues that the length of deliberations indicates that the jury had trouble reaching a decision and this was a close case.  Although the total time for deliberations was roughly between two and three hours, and the total time for the trial (excluding jury selection and deliberations) was roughly six hours,[4] we disagree with defendant that the

---

[4]     The jury heard opening statements and testimony for one and a half hours on the first day of trial and testimony for three hours the morning of the second day.  The jury heard the court's instructions and counsels' closing arguments for one and a half hours that afternoon and returned for deliberations at 9:12 a.m. on the third day of trial.  The court discussed a note received from the jury at 10:18 a.m. and granted the jury's request for readback of Lieutenant Dimburg's testimony.  At 11:04 a.m., the court discussed a second note received from the jury concerning a typographical error in the verdict form and recessed for lunch at noon.  Although the minutes do

14.

length of deliberations and the jury's request for readback of testimony support that he was prejudiced by the erroneous instruction being sent to the jury room. These circumstances simply suggest the jury acted dutifully and diligently, and nothing suggests a conflict among the jurors.

The jury spent approximately half an hour listening to readback, which should not be included as part of the deliberations. (See *People v. Walker* (1995) 31 Cal.App.4th 432, 438.) Additionally, some of the jurors reviewed the jury instructions relating to the elements of the offenses to make sure that they were properly carrying out their duties. (See *ibid*.) While we recognize that in some cases our Supreme Court has inferred a close case from unduly lengthy deliberations (see *People v. Rucker* (1980) 26 Cal.3d 368, 391, superseded by statute on other grounds as stated in *People v. Elizalde* (2015) 61 Cal.4th 523, 531) we cannot do so under the facts of this case as the length of the deliberations is consistent with the jury's conscientious performance of its civic duty, rather than its difficulty in reaching a decision. (See *Walker*, at pp. 438–439.) Defendant's reliance on *Rucker* is unconvincing as in that case, the jury deliberated for nine hours after the court improperly admitted statements which were relevant to the " 'excellent' defense" provided and "were most prejudicial" (*Rucker*, at p. 391).

We also reject defendant's argument that the jury's request for readback of testimony indicates that this was a close case. The request for Lieutenant Dimburg's police report and testimony suggests the jury was evaluating defendant's credibility by comparing defendant's statements to Dimburg with defendant's contradictory trial testimony. (See *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1075.) As such, the jury questions do not relate to the erroneous instruction and do not suggest the jury was

not reflect the length of the noon recess, we note that trial reconvened around 1:30 p.m. the first two days. At either 1:39 p.m. (according to the reporter's transcript) or 1:50 p.m. (according to the clerk's minutes), the court reported a brief conversation it had with one of the juror's just before the jury entered the courtroom with its verdict.

having a difficult time reaching consensus.  In *People v. Carrillo* (2004) 119 Cal.App.4th 94, relied upon by defendant, the court concluded that the erroneous admission of evidence of poverty may have influenced the jury's verdict as to whether Carrillo aided and abetted robbery because the evidence of guilt was "entirely circumstantial" and the jury's question indicated it was struggling with Carillo's guilt.  (*Id*. at p. 104.)  The same circumstances do not exist in this case.

We conclude that it is not reasonably probable that defendant would have received a more favorable result if the court had not included the aggravating factor instruction with the written instructions provided to the jury during deliberations.

### DISPOSITION

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

PEÑA, J.

DE SANTOS, J.